Alfred Eckstein v. Commissioner.
Eckstein v. Commissioner
Docket No. 5763.
United States Tax Court
1945 Tax Ct. Memo LEXIS 79; 4 T.C.M. (CCH) 893; T.C.M. (RIA) 45296; September 21, 1945
Bernard Wall, Esq., and Irving T. Palmer, C.P.A., for the petitioner. F. S. Gettle, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $2,315.96 in the petitioner's income tax for the calendar year 1939. The only issue for decision is whether the Commissioner erred in including $17,500 in the petitioner's income representing 1939 gain from a sale in 1929. The facts have been stipulated. [The Facts] The petitioner, an individual, filed his return for the taxable year with the collector of internal revenue for the second district of New York. He used a cash receipts method. The petitioner has been a member of the New York Stock Exchange since 1902. A dividend gave to the petitioner, in February 1929, a "right" to an additional one-fourth membership. *80 He sold this "right" for $110,000 to Edward Schafer, Jr. in March 1929. No money was received by the petitioner at that time on account of the sale. Schafer acquired three additional "rights", two of them by gift, and was elected to membership in the exchange. The New York Stock Exchange, before electing Schafer to membership, investigated him to make sure that he was a suitable person to be a member of the exchange. This investigation included an investigation of his financial condition as well as of his character. The exchange, as a condition precedent to admitting Schafer to membership, required, as is usual in such cases, that the petitioner enter into an agreement with Schafer subordinating his claims against Schafer, for the purchase price of the "right" for the benefit of other persons having claims against Schafer arising out of business related to his membership in the exchange. This agreement was dated May 14, 1929 and was between the petitioner and Schafer. It referred to the petitioner as the lender and recited that Schafer had borrowed money from Eckstein to be used in the purchase of a membership in the exchange and the agreement was executed to enable Schafer to *81 comply with the requirements of the exchange to become a member thereof. Schafer acknowledged therein that he had received from Eckstein the sum of $110,000 to be applied towards the purchase of a membership in the exchange and agreed to repay this sum "from time to time" with interest thereon at 6 per cent "and, in any event, thirty days after the applicant ceases to be a member of the said Exchange and all claims entitled to priority in payment, as herein provided, have been paid in full." Petitioner subordinated repayment of the sum loaned to the payment in full of all claims against Schafer arising out of his membership and agreed not to institute any suit for the recovery of the sum loaned as long as Schafer was a member of the exchange. The agreement further provided that Schafer could make payments to the petitioner on account of the sum loaned or the interest thereon provided that the payments left him still solvent. The agreement was to bind and inure to the benefit of the parties, their heirs, executors, administrators and assigns. The Rules of the New York Stock Exchange required that the parties to a sale of a "right" to a seat, payment for which was to be made at some *82 time in the future, execute an agreement of the kind above set forth and permitted no other instrument of agreement to be executed by the purchaser. Schafer has continued as a member of the exchange. The petitioner's basis for gain or loss on the "right" sold to Schafer was $16,200. His income tax return for the year 1929 was filed on a cash receipts basis. He reported therein a gain of $93,800 resulting from the sale of the "right" to Schafer. The return showed a net loss and no tax due. The petitioner received the following payments: Date
Amount
July 18, 1929
$20,000.00
Sept. 24, 1931
15,000.00
May 29, 1932
20,757.35
Oct. 10,1939
17,500.00 The balance due the petitioner at the time of the last payment was $54,242.65 exclusive of interest. The petitioner accepted the last payment in full settlement of the amount due. A stock exchange membership was sold on May 16, 1929 for $410,000, ex rights. Section 111 of the Revenue Act of 1928, which was in effect at the time of the abovedescribed transaction, provided that the gain from the disposition of property shall be the excess of the amount realized over the basis, and the amount realized shall be the *83 sum of any money received, plus the fair market value of the property (other than money) received. The petitioner disposed of his "right" by transferring it to Schafer in March 1929. The price which Schafer agreed to pay was $110,000. The petitioner's basis for gain or loss on this "right" was $16,200. He received in exchange for the "right" Schafer's agreement in writing to pay him the purchase price of $110,000 with interest. If this agreement had a fair market value at that time in excess of the petitioner's basis on his "right", then the petitioner was required by law to report that difference as a gain. The petitioner, in his return for 1929 which was under oath, reported that the agreement had a fair market value of $110,000, and that he had realized a gain of the difference between that amount and his basis on the "right". He was required to do that by the law. The petitioner also received in that same year from Schafer $20,000 in partial fulfillment of the agreement. Schafer at that time was well known to the petitioner, as was Schafer's father, who had dealt for his son in the acquisition of the "right". Schafer was a person of character acceptable to the Exchange and was *84 solvent. He became the owner of a seat on the Exchange. He acquired one-half of it by gift. A seat on the Exchange was worth at that time about $410,000. The agreement of Schafer bore interest at 6 per cent. It has been held that the "lender" in such an agreement may sue for the interest due him. , aff'd . The seat itself was some security for Schafer's agreement despite the fact that no definite time was fixed for payment. The record shows that interest was paid for a number of years and also substantial payments were made on the principal in 1931 and 1932. The stock market crash occurred in the fall of 1929 and thereafter a severe depression set in. Schafer was not able to pay the petitioner as rapidly or as fully as the latter had hoped and expected. But Schafer was able to retain his seat on the Exchange and he still owns it. The Commissioner is now attempting to include in the petitioner's income for 1939 the cash payment which the latter received ten years after the sale in final settlement at a discount of his claim against Schafer for the purchase price. The *85 Commissioner contends that the agreement had no fair market value whatsoever in 1929 and that no taxable transaction resulted at that time. We conclude that this contention is shown to be unsound by a fair preponderance of the evidence and that the payment received by the petitioner was not, under the circumstances of this case, taxable income in 1939. Decision will be entered under Rule 50.